Good morning. Our first case is Carina Ventures v. Cargill. Mr. Goodnow, whenever you're ready. Thank you. Good morning, Your Honor. May it please the Court. Chris Goodnow for Plaintiffs' Appellants Carina and Amory. A party has a constitutional right to opt out of a class action settlement. The court below deprived Carina and Amory of that right because counsel, my firm, inadvertently missed a deadline to opt out of the settlement by several hours due to a calendaring error. We regret that mistake. But the sanction, the result under the law is not termination of a party's case, only on the formality that the deadline has been missed. Mr. Goodnow, in your brief, you've made this point, calling this, in essence, a terminal sanction. How much money will Carina Ventures get under the settlement? We're not positive yet, Judge Hamilton. Our expectation is something like a low few hundred thousand dollars. The class has said that our purchase volume is roughly 2% of the overall purchase volume at issue. On the flip side of that, we've calculated many millions of dollars ascribable in damages to Cargill specifically. And of course, if Cargill remains in this case, it would be jointly and severally liable as a co-conspirator. But you're not being, you're not being, it's not as though your case is being dismissed. So, final judgment has been entered in our case. So, the case is over. In your favor? We would know. We strenuously object with it being in our favor, Your Honor. But it awards you money, correct? No, Your Honor. So, the way this happened below is the district court denied our request to be added to the opt-out list and that was . . . Yes, yes, absolutely. No, no. Do you see that one next to the mic? I see one right here. The one that looks like this. Sure. Yes. Okay, thank you. Okay, great. So, Judge Hamilton, the district court below excluded us from the opt-out list or did not permit us to be added to the opt-out list. And that was the end of its analysis. The only reason we're talking about receiving any money is that the class lawyers came a while later at the hearing for the final approval and has told us that they will allow a belated opt-in to the class settlement. So, that's . . . it's not actually part of the rationale of the district court's decision. It did not award us any money. It terminated our claims and entered judgment on them. And now, after the fact, there's an opportunity to make what we've called a conditional claim on the settlement. Thank you for the clarification. So, Your Honor, we stress it under Rule 6 and under Pioneer. The rule is not just the formality that the party missed the deadline, but the court must consider the substance. Whether counsel's good faith mistake actually impacted the proceedings below and prejudiced the other side. Mr. Grinnell . . . Go ahead. Go ahead, please. Mr. Grinnell, what happened such that, you know, your firm sent the opt-out request email just a day late? You know, like, I can understand if you didn't read . . . I understand maybe you didn't see the deadline at all, but then it did come just a day late. So, what's the explanation there? It was flagged for me internally the day after, and that was the first time it was brought to my personal attention. What happened generally is that there was a calendaring failure when the notice was put on the docket. We didn't open it, go to page 6, find the date, and then put it as part of our normal case calendar. That came to light the next morning of, and that's why we sort of moved promptly to try and do what we could to state our intention to opt-out. How did it come to light? How did it come to contact? Our client had reached out to us asking if we had done it because they had heard that there were others who were opting out, and that's when we realized that we had missed the deadline. Mr. Grinnell, I think the, you know, obviously here, I think petitioners face a bit of an uphill climb because of the standard of review, right? Standard of review is abuse of discretion, and the, you know, absent kind of some sort of impression on our part that basically the reasoning was unreasonable or completely kind of beyond the pale, even if we ourselves might have come to a different decision, typically in those cases we affirm. And so can you address the standard of review and how it impacts your appeal? Sure. So the standard of review is abuse of discretion, as the Court rightly knows. And as the Court also knows that errors of law are an abuse of discretion. There were several errors of law that were made below. For example, under the Pioneer test, the Court must consider the length of delay and the potential impact on judicial proceedings. The Court below declined to do that. What the Court said is whether it's one day, months, or years after, late is late. That's not the law. Another legal error. Does the law prohibit the judge from enforcing a deadline strictly? So Rule 6 prescribes that there is a test for excusable neglect, that if a litigant or counsel misses a deadline, the deadline can be extended for excusable neglect, and the Court must undertake the excusable neglect analysis according to the standard set forth in Pioneer. This, courts and others, and we cite the cases in our brief, reverse when lower courts just fail to do the Pioneer analysis. And I think my friends on the other side would agree with that general proposition. There is, of course, a disagreement whether the Court misapplied Pioneer below, and we think the Court did do so on the law. So how, under your view, how much extra time were you entitled to such that denial would be an abuse of discretion? So I, the... We measure that in hours or days or weeks or months? So there is, this Court in Brown said that there's no bright-line rules here and that this has to be a consideration of all relevant circumstances. That's both the Port and Pioneer and Rob, which gets to another issue I can touch on. But what happened here was that the delay was hours long and it was mere days before we ended up in front of the District Court seeking relief. But that exercise of hours or days, ultimately, under Pioneer, the analysis is to figure out, was there an impact on the proceedings below? And the answer to that question is emphatically no. So let's talk about impact on proceedings under the degree of forgiveness that you all are seeking here. This is a multi-district litigation, correct? It's actually a mass action, so to speak, but it is consolidated, similar to, I would say. It was transferred, you all originally filed in Texas, though? So, yes. Sorry, your assignor filed in Texas, correct? So actually, Carina took assignment to the claims even before filing the lawsuit. So it was Carina that filed its lawsuit in the Southern District of Texas. We also represent Amory, which also took assignment before filing its lawsuit. That was actually filed in the Northern District of Illinois. Okay, but in either event, what we have here is a pretty, not the most extreme in the federal system right now, but among the more complex pieces of litigation, right? Thousands of purchasers, lots of defendants, right? There are several defendants in this case. There's actually only a handful of direct action plaintiffs that have filed, and I believe it was 14 entities total that opted out of the settlement. So there are definitely many purchasers of Turkey, but sort of looking at the entity and litigant level, I would say compared to many other mass actions and multi-district litigations, this is probably of a smaller size. This is not Smith against Jones? No, but that's absolutely right, Judge Hamilton. And part of the mix here, maybe you could address this, but from my perspective, part of the mix is how hard does a district judge presiding over such a case need to work to save a sophisticated party from its own mistakes? So the only thing we think the district judge needs to do is faithfully apply pioneer in this court's related precedents. That answers the question of how hard or not hard to work. And there's a pretty set of settled factors. And then the pioneer court is also clear that you have to consider all relevant circumstances. And this court in Rob said that the pioneer factors themselves, of which there are four, are not exclusive. And that's another error, a legal error that the court made. Would relevant factors include the sophistication, skill levels, and hourly rates of counsel? So, Your Honor, in pioneer itself, where the court said that a finding of excusable neglect was required, that addressed sophisticated counsel in that case, who looked at an opt-out notice, or excuse me, a notice of bankruptcy, and misapprehended the deadline, which was in an inconspicuous place. It's sort of, you know, a pretty ordinary kind of error, similar to the error that we made here in this case. So, you know, I think, yes, a court could consider sophistication. But I don't think that's a relevant consideration here when we're talking about this simple human error. It's a calendaring mistake, I think, that a sophisticated lawyer can make just as well as a lawyer who's less versed in practice in the federal courts or in the Northern District of Illinois. Mr. Goodnell, when I read the briefs and I kind of look at your arguments, the general impression I get is that you are asking us to redo the weighing of the considerations that the district court underwent or undertook in addressing this matter below. Why is that the wrong way to think about it? Because, obviously, that way gets you nowhere. Correct, Your Honor. So it starts with the legal errors that I started to identify that the court made. And when you make a legal error where you either fail to consider one of these circumstances, such as the length of delay, or when you fail to consider another relevant circumstance, such as the prejudice to us, this court has a well-established policy in favor of resolving cases on the merits. The district court did not consider the prejudice to us, ending our cases, because it said, crucially, to quote the court, that's not a factor under Pioneer. That's another legal error. And so when you make a series of legal errors, then the balance itself is necessarily going to be flawed. But on top of that, I don't think the court actually balanced the factors in this case. And I look at page 5 of the court's opinion, and it said that our oversight or mistake is not a valid reason for delay under Pioneer, and that is grounds for denial in and of itself. That's just wrong twice on the law. It's wrong the first time, because the Supreme Court expressly held that Congress plainly contemplated that these sorts of errors could be the basis for excusable neglect. And then to say that attorney oversight is itself grounds for denial is also wrong. Mr. Goodenow, on that point, the district judge's opinion is interesting here. In a number of places, he says this factor is not a sufficient basis for finding excusable neglect or not a valid reason there. In each of those instances, he seems to be ambiguous about whether he means in this case or ever. And if he meant in this case, that's perfectly within his discretion. He acknowledges it's ultimately discretion he's applying here. So why should we assume that he made the legal mistake of meaning not ever? So I don't think we need to assume it, because I think it's playing on the court's opinion itself. At page 5 where he says a party's failure to provide a valid reason for the delay is grounds for denial. That's simply wrong. We don't think that's a proper statement of the law, nor reflects balancing. But even if, Judge Hamilton, this is part of the – I'm sorry, go ahead. You can answer. Just to finish, even if this was part of the analysis of the balancing, there was still no consideration of the length of delay. There was still no consideration of the evident prejudice to us to additional legal errors. And a third, which I would love to touch on, and I see I'm already running into rebuttal time, is the windfall that the court awarded in this case, where the courts, this court and other courts, have said that the loss of prejudice is not a windfall. And the court below recognized that permitting Karina and Emery to opt out would not affect the settlement in any way. And that's because our purchases were excluded from the purchase volume used to set the settlement amount. So when that happens, that strongly weighs in our favor because there's an absence of prejudice to Cargill. But the court bound us to the settlement nonetheless, and that gave Cargill a windfall. It settled our cases and got rid of hundreds of millions of dollars potentially in liability. But isn't the word potentially key there? Because there's no guarantee that you're going to win the lawsuit had it gone forward. And so if you do lose the lawsuit, then how can that be considered a windfall? So, Your Honor, the constitutional right to opt out does not have a price. Even if everyone thought that the class settlement was an extraordinary result, a party still has a right to opt out and still has a right to go pursue its claims. Now, we are of the view that the class settlement at 0.6 percent of purchase volume is very low and, in fact, not worth entering into. Because of that, we would rather take our chances, as it were, and we feel very strongly in the merits of this case. I think counsel for DPPs as well feels very strongly in the merits of this case. The same case has been tried twice in the district. Not tried, but it survived the summary judgment in the District of Minnesota twice. We feel very good about this case. We believe in it. And we have a right to pursue that. Now, of course, we missed the deadline. We regret that. But that gets us back to Rule 6 and the fact that there's a pioneer balancing test. What do we do with the statement in Pioneer that says, Invertence does not usually constitute excusable neglect? And so then the district court looked here and said, well, you know, this is kind of – there's nothing unusual here. And so even under Pioneer, inadvertence doesn't rise to excusable neglect. So I would – I direct the court to another part of the question. I mean, it's not like the court in Pioneer just kind of opened the barn door and said, you know what, even any time a lawyer makes a mistake that, you know, you have to do – you necessarily have to grant the extension or accept the filing or what have you. In fact, it seems like the Supreme Court is pretty clear that, you know, mere inadvertence typically gets you nowhere. So, Your Honor, I am out of time. We'll give you more time. Thank you, Your Honor. So it is absolutely true that not every case in inadvertence is going to warrant being let out of a deadline. Yes, it's true. I mean, usually it won't. Oftentimes it will not. Maybe even usually. But what I do focus on in Pioneer is the statement there, later in the opinion, where they say the absence of prejudice to the other side, the absence of any impact on the proceedings, and counsel's good faith, the last of which is not an issue in this case because the court found it below, way strongly in favor of finding excusable neglect. So there are other factors in consideration here. And when the other side of the ledger is simply late is late, that's not an appropriate balance under the test. And I would commend the court to look at Coleman in the Fifth Circuit, to look at Ascendant in the Third Circuit, and to look at Cheney in the Eleventh Circuit. These are all cases where there were calendaring errors, notices lost in the internal mail room, sort of similar in kind errors as were made here. And those courts all reversed the district court below, the same relief we're seeking here, because the court recognized that the absence of prejudice in those cases, and good faith, and the lack of any impact on those proceedings below, all weighed strongly in the Moven's favor there, which is the same back pattern that we have here. Mr. Bonnell, with my colleague's indulgence, I'd like to ask you one other question that I hope the defense might also address. One of the issues in this case seems to be whether your client has actually ever provided all of the information required to opt out, particularly concerning sales volume. Could you address that, please? Sure, happy to. So our answer is yes. And when we sent in that email on April the 22nd, and the settlement administrator responded six days later, the settlement administrator said, your opt-out is late. It's the only flaw that was identified. I will say I'm not sure how much it should matter in the court's decision-making, the particulars of this, because the notice plan also was not complied with in the other direction. We were supposed to get individual notice. The settlement administrator was supposed to make reasonable efforts to do so, and did not. We understand that debate, but counsel clearly got notice. So could you address what was missing and why that is not a sufficient basis on its own, to say you still haven't submitted a sufficient document? So I would direct this court to the Third Circuit's analysis in Perrigo, and this actually happens somewhat frequently in these kinds of cases, is that a party will miss a deadline, and rather than submit anything to the settlement administrator, they'll actually go straight to the court and seek leave to submit an untimely opt-out. And so those courts calculate the length of delay from the deadline until you seek relief from the court. And so here that would be a few days rather than a few hours. So that's one approach. That doesn't really answer my question, but I understand if that's your answer, that's your answer. Well, no, so then to get to sort of the notice itself and what was in it and what was supposed to be there. So one thing that the district court identified is that we didn't include our assignors in the email itself. Perfectly true. I did not type the words Cisco and names into the email. They are identified in the complaints that we cited to the settlement administrator in our email. And on top of that, there is simply no mystery as to who our assignors are. This has been a hotly litigated issue. The defendants have filed two motions for summary judgment saying our assignments are violated of public policy, both of which have been denied. So the fact of who our assignors are is not lost on anyone. The next thing that the district court pointed to was the failure to provide the assignment agreements themselves. We had provided those years earlier. AMRE already had provided it to the settlement administrator when it opted out in the Tyson settlement, the same settlement administrator here. And Karina's assignment agreement we provided over the course of jurisdictional discovery, again, as part of litigating this precise issue. And there was no doubt that as a result of those assignment agreements, we were the 100% assignees of the claims of Maines and of the claims of Cisco. That was actually something that both sides agreed upon when they were briefing below on the summary judgment issues and was a finding of each court that resolved those summary judgment issues, both Judge Harjani and the predecessor who oversaw these cases, Judge Kendall. The reason why I point that out is that a direct purchaser itself, Cisco, for example, if it were still in these cases opting out, does not have to provide any purchase information at all under the settlement notice. And that's because the defendants already have the purchase volumes in their possession. Indeed, they are supposed to mail those out to the settlement class members so the settlement class members can review them and report them back. And I will say, Your Honor, as to the notice to Mr. Gant, even if we concede that he got notice, there's no dispute that his notice had those purchase volumes empty. So there's no one who got the claim form with the money filled out as it was supposed to be. And so by telling—in any event— Mr. Goodnell, if you could wrap up, please. Yes, and I'll just finish with this on this point, Your Honor. If I am telling the defendants that we are the 100% assignees of Cisco and of Mainz, that resolves the issue because that tells them all of the Cisco's and Mainz purchases are ours. So they have that information as well. Thank you, Mr. Goodnell. We'll give another minute for rebuttal. Thank you very much, Your Honor. Thank you. All right. Now we'll hear from the appellee. Mr. Scudro? Good morning, and may it please the Court and counsel. Mike Scudro here on behalf of the appellees. I want to just start where some of the discussion hovered in the last 15 minutes or so, and that is this—to start with the fact that this is an extremely deferential standard. We have abuse of discretion, but as this Court pointed out in Harrington, for many of the reasons that have been discussed in the need to weigh a number of factors, this is at the extreme end of the deference spectrum, as the Court made clear. Here the Court asked and issued an order asking additional questions of the parties, held oral argument on June 18th of 25, and then issued a detailed opinion. And the detailed opinion repeatedly recognizes and properly quotes Pioneer and notes that Pioneer lists standards including the four that the Court addresses. I think it is clear in context in response to Judge Hamilton's question that where there are statements of law made, the Court is every time making those statements in the context of the overall weighing of the factors in this case. I would like to address, if I may, a couple of points that came up recently. There was some discussion, I believe, with Judge Hamilton regarding the fact that this is not— they're not being denied their claim. This is not a default judgment, for example, as is true in some of the cases. They're not being denied an appeal, as is true in some of the cases. As the Second Circuit pointed out in the case of Manhattan Ward, we cite in our brief, it's actually one is not sure which is better when it comes to looking at the potential of taking a settlement on the one hand or proceeding to litigation on the others. And I would just add here, I understand that at summary judgment in the Broilers litigation, defendants won on claims in that context. I'd also note that the Grilly decision in the Eleventh Circuit in 1996 said there was little prejudice there because they had the ability to file a late claim. To clear up any ambiguity, there is the right to file a late claim here. There is an agreement. In fact, at ECF 1377.1 and 2, the appellants here have filed claims as part of the settlement. So I wanted to make sure there was no ambiguity on that. Mr. Scodro, how exactly was Cargill prejudiced by the one-day or maybe it was 12-hour delay, the delay per se? Sure. So a number of courts have recognized, and the court here tapped into these same notions, that when you have a complex settlement like this, the benefit of the bargain is that when the class period, the opt-out period closes, you have a universe certain that you can look to. And indeed, one of the courts even cites the manual on complex litigation to this effect, that there ought to be a known universe then of opt-outs. And that was certainly true here. The timing then required the administrator to calculate. They had to figure out what the opt-out percentages were, decide whether there would be reductions in the settlement value, and so forth. Was that work being done in the delay period and, therefore, needed to be redone? So I believe it was April 28th when the list of opt-outs that was provided to you, I don't know at what point they were having the discussion. So there were thresholds set in a letter agreement that was not public. This process is laid out in the settlement that was made public on the 15th of January. But what it says is there will be a separate letter agreement with thresholds. At one threshold, if there are enough opt-outs, there will be a reduction in the $32.5 million value. If it hits an even lower threshold or higher threshold of opt-outs, there will be a complete potential blow-up of the settlement. So that calculation was done. But am I correct that none of those things are actually affected by whether Ann Marie and Karina are in or out? So it turns out we know that given the other opt-outs, and the court correctly noted that there would not be a difference. That's correct. Now that actually does tap into another element of prejudice, namely the fact that in courts have recognized this, too. One's exposure, frankly, is increased. If you're settling for $32.5 million to buy a piece, you hope for as few opt-outs as possible. And as courts have recognized the mere fact that additional opt-outs may occur, if there's more exposure, that in itself is. So that's prejudice from the fact of opting out rather than from the delay? That's correct, Your Honor. Okay, just making sure. Yes, and I'm thinking of a case in which I believe it was the D.C. Circuit where there was an added claimant, and so it added to the potential overall class payout. And they said, yeah, well, you know, you're adding to the potential payout. In this case, it's doing the same, but it's on the exposure side, right, having additional potential payout. Federal, would you agree that the district judge could have found excusable neglect here within his discretion? You know, in light of many of the cases we've cited, Your Honor, where mere inadvertence was the reason and there was little else in support, I would hesitate to concede. I would say, though, that it is certainly possible that there would be no abusive discretion under those circumstances, yes. One of the things that concerns me, particularly in this kind of the timing and complex litigation, whether it's we're talking about class actions, settlements, and so on, and actually it's a problem that arose with Carina Ventures earlier this year in the Boiler Chicken case, which we had on there was some uncertainty about whether a settlement had been reached. One of the things that concerns me is the potential prejudice and potential misuse of ambiguity or uncertainty. In particular, and perhaps Mr. Goodenow might consider addressing this in rebuttal as well, let's suppose there was some external shock to the system here that the day after this deadline passed, let's say the Supreme Court or a relevant circuit court had issued a decision that dramatically altered the likely outcome of the merits of the cases. That would let one or both sides take unfair advantage of uncertainty about whether the relevant deadline had been met. Absolutely agreed, Your Honor. I think that it's no surprise that there are so many cases, as we cite in our brief, from this court and others in which even a single day has been found sufficient to find a lack of basis for a Rule 6b extension. I think Your Honor's point feeds directly into one of the many reasons why that is the case as the court points out in its opinion, we needed finality in terms of the class. Your Honor, I would like to briefly address some time that was spent a moment ago on the court's language about the time, the fact that it was a single day here. I do want to note that that sentence appears in connection with the lack of rationale, ties into the many, many cases where this court and others have concluded that attorney inadvertence is not sufficient. Judge Lee, to your earlier question, it's exactly what the court said in Pioneer. It said that it is unusual that mere inadvertence would constitute grounds for excusing a blown deadline. Again, no surprise, many courts have done so with only a day's delay. Mr. Scoggio, I'm glad you brought up Pioneer because this is one of the issues I'm kind of struggling with here. Pioneer does say that, but it also says many other things. When you read Pioneer, the sum total of the circumstances at issue in that case does seem kind of comparable to the sum total of the circumstances here. There was basically an attorney neglect issue by experience counsel who didn't see a notice that was in a court order, but it was in an unusual place in the court order, and good faith was not disputed, and there was no disruption to judicial proceedings from the delay or real prejudice to the other side from the delay. And then in Pioneer, the Supreme Court reversed and found that the lower court had abused its discretion in not finding excusable neglect. So can you help me distinguish these two cases? Sure. I mean, first and foremost, I would say that in Pioneer, to use the court's own words, there was a dramatic ambiguity in the notice. You had the kind of rare form. So on the one hand, it's interesting. They're talking about how unusual it would be for mere inadvertence by the attorney to constitute a basis for excusable neglect. At the same time, to your point, Your Honor, they find it. I think the explanation for that is in the early part of the opinion where they describe, again, the dramatic ambiguity that even experienced counsel would be unaccustomed to finding a bar date as hidden as this one was. And I think in stark contrast, where you have mailed notice, e-mail notice, multiple ECF appearances and postings, I think under those circumstances, I think that alone easily puts Pioneer in a position where you certainly couldn't say there was an abuse of discretion in this case. I would also add, Your Honor, that with regard to length, we disagree strongly with the notion that they have yet filed a proper opt-out. There are reasons why the opt-out is extraordinarily well-defined, as this court has held repeatedly. And this also extends into the court's Navistar line of cases, which I realize is a separate doctrinal bucket in one of the two questions presented. But even in that area, the court has noticed, as I said, in Navistar, we can't have courts, you know, considering dozens or hundreds of different questions in every case. So, you know, here it's clear that there was a precise requirement. They still have not completed it. The notion that we were supposed to define this information from other discovery, there's no authority supporting that suggestion, and certainly that it would be an abuse of discretion for the court to find, as it did here, in discussing length. Because the court goes on. It doesn't just say, one day, that's too long. It goes on to say, and by the way, it isn't one day. They still haven't filed the information. I'm not sure how to weigh that, given that it's undisputed that the notice they received, let's just assume they received it, was itself deficient in failing to identify the Turkey purchase volumes. So to be clear, Your Honor, I'm glad you raised the issue. I want to clarify a record point in that regard. So as the exhibits to the Hansen Declaration, the administrator's declaration show, the hard copy long form notices that went to the original two, that went to Cisco and Maine Paper, those actually, if you look at those exhibits, they include all of the information that is required to be sent to the direct purchasers, as that is described in the class definition. The problem is, and the reason we can't, and so that was proper. In our view, the notice was proper to the two base direct purchasers, the assignors in this case. You can't then do what they do, which even if this were legally proper, and say, well, because they're claiming 100 percent assignment, we could use those same numbers with regard to the two SNEs, Carina and Amory. The reason for that is we know that isn't 100 percent. The appendix at page 457, which is the list of opt-outs as of late April of 2025, shows an assignment of something, doesn't say the amount, I don't believe, from Aramark to Cisco. Or excuse me, from Cisco to Aramark. So you have some of Cisco's turkey rights being assigned to at least one other party. So the notion that it was one-to-one and we should therefore have just assumed that these totals, in terms of the original purchasers, that those totals applied equally to the assignees, that simply is belied by the record. With at least this instance, there may be more, but certainly that is not a leap that we should have been expected to do. They needed to comply with the opt-out form. They have yet to do it, and I think the court was well within its discretion in concluding that one day would be too much under the circumstances weighed here, but it isn't just one day. Mr. Scudro, you had mentioned Navistar, and I wanted to talk to you about that. Judge, the district judge said that in Navistar, the circuit has held that when a judge has issued instructions how to opt out, a plaintiff cannot opt out by other means. That seems to me to be not quite at least my reading of Navistar. What is your position as to whether or not the reasonable indication test is something that still might be viable in the Seventh Circuit, or whether Navistar has definitively said that the reasonable indication test is not to be applied in a situation where detailed instructions on opt-out has been disseminated? Two quick responses, Your Honor. First, I think Navistar is clear that in instances, Navistar clearly leaves open that other means would be available where the district court has not provided detailed instructions on how to opt out. But in cases where the district court has provided those instructions, it's our view that Navistar requires the opt-out party to adhere to those instructions. If there's relief available, it's not under the reasonable indication doctrine. Rather, that relief would be under, they could, again, seek Rule 6 relief, as we have here, but that under the reasonable indication doctrine itself, Navistar requires adherence to the detailed opt-out procedures. And I would also note, Your Honor, just to be crystal clear that the court here understood precisely what Navistar required. Just in the very next sentence of its opinion, and this is on page 3 of the slip opinion, the court goes on to quote Navistar correctly to say, the judge is entitled to insist that class members follow the instructions. So it's actually not clear. The court here may have been reading Navistar to allow a bit more leniency than we read it to provide, but it says it's entitled to insist, and the court here certainly couldn't have abused its discretion in concluding that it was going to accept that entitlement under these circumstances and hold the opt-outs to the requirements. Thank you. Anything else touch Hamilton? Thank you, no. Thank you. Thank you. Mr. Goodnow? Oh, I'm sorry. Ms. Scarlett. Good morning. May it please the court, Shanna Scarlett on behalf of the direct purchaser class. Direct purchasers take no position on whether there was excusable neglect on the behalf of the appellants in opting out. We're here only to address the issue of notice. The court made a finding that notice to the class was constitutional, and it's incredibly important to us that that finding is upheld and looked at separate from whether or not there was individual notice to Karina and Amory. But we'll say this, we believe there certainly was individual notice. Class counsel and the claims administrator undertook an enormous effort to send notice to the thousands of class members. That included sending mailed notice to the headquarters of the location of the two entities. It included above and beyond sending notice to Mr. Gant, who had been asked who had sent notice to the claims administrator after the Tyson settlement, asking for direct notice. And then, of course, there were multiple entries sent via ECF where counsel for these two parties received over five notices regarding notice. Rule 23 only requires the best practicable notice. The district court ordered a notice program that required only notice be sent to the entities identified in the defendant's sales data. We certainly did that here. Under the circumstances, we'd ask the court to affirm certainly that the notice program itself was constitutional, carried out adequately, regardless of whether or not it takes into account the individual notice issues that the appellants have raised. Thank you very much for your time. Thank you. Mr. Goodnow. Yes, thank you, Honor, for a bit more time. Judge Hamilton, to your question about an intervening event, I think that's why the length of delay factor matters. If we had delayed long enough such that something could have happened, then the factor very well could cut the other way. I think it also bears on good faith. If we were planning to opt out of the settlement and then something bad happens and so we decide to opt in or vice versa, that's playing both sides. But the district court found that we engaged in good faith here because the record is clear that we objected to the settlement from the beginning. Indeed, in March, a month before the deadline, we objected to the settlement and said that it was too low when we were objecting to the DPP's request for 10% of our recovery. Just finally then, Judge Tableson, to the points that were raised on prejudice. I want to point the court to this language in Perrigo from the Third Circuit. Upsetting a defendant's interest in resolving all claims against it does not suffice to establish prejudice. Here, counsel for Cargill talks about wanting finality, but wanting to avoid litigating your case on your merits is not prejudice. The prejudice here is to us forced termination of our claims and the court should not have awarded a multimillion dollar windfall in a settlement that Cargill never expected. Rather, this court should reverse and remand with instructions to opt us out of the Cargill settlement. Thank you. The case will be taken under advisement.